1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JAMES F. PIFER,

11            Plaintiff,                    No. CIV S-87-1623 FCD KJM P

12       vs.

13   DANIEL MCCARTHY, et al.,               ORDER AND

14            Defendants.                   FINDINGS AND RECOMMENDATIONS

15   _____/

16            Plaintiff is a California prisoner proceeding with counsel on an action for

17   violation of civil rights under 42 U.S.C. § 1983.  On January 30, 2006, the remaining defendants

18   – defendants Alvarado, Borg, Bunnell, Dowell, Kraemer, McCarthy, Price, Rowland, Stainer,

19   Walker and White – filed a motion for summary judgment.  Oral argument was heard with

20   respect to the motion on May 24, 2006.  Carter White appeared for plaintiff, with certified law

21   student James Yi; Sandra Lusich appeared for defendants.[1]

22   I.  Background

23            In his fourth amended complaint, plaintiff claims that he was wrongfully housed

24   in segregated housing for approximately fourteen years at three different California Department

25   _____

26        [1] Since the hearing, William Cashdollar has substituted in as counsel for defendants.

1

of Corrections (CDC)[2] prisons:  first, for approximately two months at "New Folsom," also known as California State Prison - Sacramento (CSPS); next for approximately two years at California Correctional Institution - Tehachapi (CCI); and lastly for more than eleven years at Pelican Bay State Prison.  The basis for plaintiff's being housed in segregated housing was his identification as an associate of a prison gang, namely the "Aryan Brotherhood."  Plaintiff claims there was insufficient evidence to establish that he was an associate of the Aryan Brotherhood; thus his placement and retention in segregated housing constituted a violation of his right to due process under the Fourteenth Amendment.

Plaintiff also claims that various aspects of his being retained in segregated housing, most notably that he remained in segregated housing for a total of fourteen years, resulted in the deprivation of his Eighth Amendment right to be free from cruel and unusual punishment.

II.  Remaining Claims

On October 10, 2003, defendants moved to dismiss plaintiff's fourth amended complaint.  The following claims survived the motion to dismiss:

1.  Plaintiff's denial of due process claims against defendants White, Price, Kraemer, Dowell and Alvarado; and

2.  Plaintiff's Eighth Amendment claims regarding the length of his confinement in segregated housing against defendants McCarthy, Rowland, Borg, Bunnell, Johnson, Walker, Alvarado, Dowell, Price, Stainer and White.

See June 15, 2004 Findings and Recommendations (F&Rs) at 7; September 27, 2004 Order (adopting same).  On January 20, 2005, plaintiff's request that defendant Johnson be dismissed from this action, following the filing of a suggestion of his death, was granted.  It is the

---

[2]  The California Department of Corrections is now known as the California Department of Corrections and Rehabilitation.

1    remaining defendants who have filed this motion.

2    II.  Summary Judgment Standard

3          Summary judgment is appropriate when it is demonstrated that there exists "no

4 genuine issue as to any material fact and that the moving party is entitled to a judgment as a

5 matter of law."  Fed. R. Civ. P. 56(c).

6          Under summary judgment practice, the moving party

7       always bears the initial responsibility of informing the district court
of the basis for its motion, and identifying those portions of "the
8       pleadings, depositions, answers to interrogatories, and admissions
on file, together with the affidavits, if any," which it believes
9       demonstrate the absence of a genuine issue of material fact.

10 Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

11 nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

12 judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

13 to interrogatories, and admissions on file.'"  Id.  Where the nonmoving party will bear the

14 ultimate burden of proof on an issue at trial, a moving party may satisfy its burden by pointing to

15 the absence of evidence to support a nonmoving party's case.  Id. at 325.  Summary judgment

16 should be entered, after adequate time for discovery and upon motion, against a party who fails to

17 make a showing sufficient to establish the existence of an element essential to that party's case,

18 and on which that party will bear the burden of proof at trial.  Id. at 322.  "[A] complete failure of

19 proof concerning an essential element of the nonmoving party's case necessarily renders all other

20 facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

21 whatever is before the district court demonstrates that the standard for entry of summary

22 judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

23          If the moving party meets its initial responsibility, the burden then shifts to the

24 opposing party to establish that a genuine issue as to any material fact actually does exist.  See

25 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

26 establish the existence of this factual dispute, the opposing party may not rely upon the

1   allegations or denials of its pleadings but is required to tender evidence of specific facts in the

2   form of affidavits, and/or admissible discovery material, in support of its contention that the

3   dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

4   must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

5   of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

6   (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

7   1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

8   return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

9   1436 (9th Cir. 1987).

10          In the endeavor to establish the existence of a factual dispute, the opposing party

11   need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

12   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

13   versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

14   judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

15   genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

16   committee's note on 1963 amendments).

17          In resolving the summary judgment motion, the court examines the pleadings,

18   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

19   any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

20   477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

21   court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

22   Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

23   produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

24   Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

25   1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

26   show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

4

1   as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

2   'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

3   III.  <u>Analysis</u>

4        A.  <u>Eighth Amendment</u>

5             1.  <u>June 15, 2004 Findings and Recommendations</u>

6             In the Findings and Recommendations providing the grounds for granting

7   defendants' October 10, 2003 motion to dismiss, this court found, in part, as follows:

> Plaintiff complains [in his fourth amended complaint] that the
> conditions he endured while in administrative segregation were
> cruel and unusual.  The Eighth Amendment forbids prison officials
> from subjecting prisoners to cruel and unusual conditions of
> confinement.  However, the Eighth Amendment does not require
> that prisons "be comfortable, or that they provide every amenity
> one might find desirable." <u>Hoptowit v. Ray</u>, 682 F.2d 1237, 1246
> (9th Cir. 1982).  Rather, the Eighth Amendment proscribes "the
> 'unnecessary and wanton infliction of pain,' which includes those
> sanctions 'so totally without penological justification that they
> result in the gratuitous infliction of suffering.'" <u>Id</u>.
>
> The only conditions [identified in plaintiff's fourth amended
> complaint] relevant to whether plaintiff was subjected to
> conditions that violate the Eighth Amendment are: (1) the length of
> time he remained in segregation; (2) the 5:30 a.m. messages
> mentioned above [referring to announcements broadcast over
> loudspeakers at Pelican Bay boasting about inmates defendants had
> injured or killed overnight].[Fn1]
>
> Plaintiff may be able to present facts showing the amount of time
> he spent in segregated housing amounted to the "unnecessary and
> wanton infliction of pain."  While there is nothing per se improper
> with segregating inmates, even for lengthy or indefinite terms,
> <u>Toussaint v. Yockey</u>, 722 F.2d 1490, 1494 n.6 (9th Cir. 1984), the
> segregation should not inflict serious mental illness, greatly
> exacerbate mental illness, or deprive a person of their sanity.
> <u>Madrid v. Gomez</u>, 889 F. Supp. 1146, 1264 (N.D. Cal. 1995).
> Accordingly, plaintiff has stated a claim against former CDC
> directors McCarthy and Rowland, former wardens Borg and
> Bunnell and correctional personnel Johnson, Walker, Alvarado,
> Dowell, Price, Stainer and White, all of whom plaintiff alleges
> were responsible for refusing to let inmates identified as gang
> members out of segregated housing until they debrief, no matter
> how long their segregation continued.  If these defendants did
> rigidly adhere to their debriefing policy without concern for
> plaintiff's mental health, and if plaintiff suffered severe mental

health problems as a result of his time in segregated housing, plaintiff could prevail on his Eighth Amendment claim.  Plaintiff fails to state a valid Eighth Amendment claim against the remaining defendants, however.

Regarding the 5:30 a.m. loudspeaker announcements, no current or former Pelican Bay employees are named as defendants in this action and plaintiff does not allege any of the former directors who are defendants knew of or condoned the announcements.[Fn2] Therefore, plaintiff has not alleged any defendant in this action was involved in broadcasting the messages described.

Plaintiff argues the requirement that he debrief before being released from administrative segregation is, by itself, cruel and unusual because, if he chose to debrief, he would be labeled as an informant by other inmates and be subjected to violence. However, the mere possibility that plaintiff might be attacked if he chose a particular course of action, even if the course of action was encouraged by defendants, cannot, by itself, form the basis of an Eighth Amendment claim.  Of course the Eighth Amendment demands that prison officials protect inmates, if they can, from inmate upon inmate violence.  See Farmer v. Brennan, 511 U.S. 825, 837-44 (1991).  If plaintiff had debriefed and then been attacked by another inmate because a defendant did not adequately protect plaintiff, plaintiff might have an Eighth Amendment claim for failure to protect.  As it stands, he does not.

_____

[Fn1] In at least two different points in his fourth amended complaint plaintiff makes reference to Madrid v. Gomez, 889 F. Supp. 1146 (N.D. Cal. 1995), and findings made therein regarding the conditions at Pelican Bay.  See Fourth Am. Compl. at 1, 12. The court does not assume that the conditions described in Madrid are the conditions to which plaintiff was subjected.  Rather, the court focuses on the conditions plaintiff specifically alleges he endured while at Pelican Bay.

_____ [Fn2] Plaintiff indicates defendant Price was aware of the announcements, but he worked at California Correctional Institution, Fourth Am. Compl. at 6:10-12., where plaintiff was housed for approximately two years, id. at 9:18-21, not Pelican Bay.

F&Rs at 4:8-6:2.

2.  Defendants McCarthy, Rowland, Borg and Bunnell

Defendants argue that they must be granted summary judgment as to plaintiff's

Eighth Amendment claims against defendants McCarthy, Rowland, Borg and Bunnell because

1    plaintiff cannot present facts indicating these defendants took part in any actions constituting a

2    violation of plaintiff's Eighth Amendment rights.  Mem. P. & A. in Supp. of Mot. for Summ. J.

3    (MSJ) at 20:27-22:7.  Specifically, defendants assert: "no evidence establishes any personal acts

4    by [McCarthy, Rowland, Borg and Bunnell] which violated any of [plaintiff's] rights."  Id. at

5    21:2-3.  All four of these defendants were or are either CDC directors or wardens.

6             There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative

7    link or connection between a defendant's actions and the claimed deprivation.  May v. Enomoto,

8    633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  A

9    supervisor cannot be held personally liable under § 1983 for constitutional deprivations caused

10   by his subordinates absent his participation or direction in the deprivation.  Ybarra v. Reno

11   Thunderbird Mobile Home Village, 723 F.3d 675 (9th Cir. 1984).

12           In his fourth amended complaint, plaintiff alleges with regard to these defendants

13   as follows:

14           5.  Defendant Daniel McCarthy was Director of the CDC and
             during the relevant time period was responsible for supervision and
15           management of Folsom State Prison, California State Prison-
             Sacramento County, California Correctional Institution, and
16           Pelican Bay State Prison.  As Director of the CDC, Defendant
             McCarthy was. . .responsible for the custom, policy, and practice
17           requiring inmates in SHU[3] to debrief in order to be released from
             SHU and into the general prison population.  This Defendant
18           violated Plaintiff's . . . Eighth Amendment right of freedom from
             cruel and unusual punishment . . .

19

20           6.  Defendant James Rowland was Director of the CDC and during
             the relevant time period was responsible for supervision and
21           management of Folsom State Prison, California State Prison-
             Sacramento County, California Correctional Institution, and
22           Pelican Bay State Prison.  As Director of the CDC, Defendant
             Rowland was. . .responsible for the custom, policy, and practice
23           requiring inmates in SHU to debrief in order to be released from
             SHU and into the general prison population.  This Defendant
24           violated Plaintiff's . . . Eighth Amendment right of freedom from
             cruel and unusual punishment . . .

25

26   _____
     [3]  SHU stands for Security Housing Unit.  See MSJ at 1:3-4.

8.  At all times mentioned herein, Defendant Robert Borg was the Warden of Folsom State Prison and was responsible for the care and custody of James Pifer, and for the supervision and control of employees of Folsom State Prison. Defendant Robert Borg was also the Warden of California State Prison, Sacramento ("New Folsom") when it first opened in 1986 and was responsible for the care and custody of James Pifer, and for the supervision and control of employees of California State Prison, Sacramento. As Warden, Defendant Borg was responsible for the conditions of the SHU in Folsom State and California State prisons. He was also responsible for following and upholding the unconstitutional custom, policy, and practice of requiring SHU inmates to debrief in order to be released from SHU. Defendant Borg violated Plaintiff's constitutional rights guaranteed by the . . . Eighth Amendment . . .

9.  At all times mentioned herein, Defendant B.J. Bunnell was the former Warden of California Correctional Institution and was responsible for the care and custody of James Pifer, and for the supervision and control of employees of California Correctional Institution. As Warden, Defendant Bunnell was personally responsible for the conditions of the SHU. He was also responsible for following and upholding the unconstitutional custom, policy, and practice of requiring SHU inmates to debrief in order to be released from SHU. Defendant Bunnell violated Plaintiff's constitutional rights guaranteed by the . . .Eighth Amendment . . .

Fourth Am. Compl. at 2:12-4:2. Plaintiff makes no other specific allegations with respect to McCarthy, Rowland, Borg or Bunnell in his fourth amended complaint. He does include a general agency allegation, id. at 7:19-22, and in pleading causes of action refers to all defendants collectively. Id. at 10-15.

In his opposition to defendants' motion for summary judgment, plaintiff fails to point to any evidence indicating McCarthy, Rowland, Borg or Bunnell were involved personally in any incident or offending acts alleged in plaintiff's fourth amended complaint. Plaintiff does not even address defendants' argument that McCarthy, Rowland, Borg and Bunnell should be granted summary judgment with respect to plaintiff's remaining Eighth Amendment claims based on the policy of debriefing before release from segregated housing. For these reasons, the

/////

/////

1    court will recommend that these defendants be granted summary judgment with respect to these

2    claims[4]

3                    3.  Defendants Walker, Alvarado, Dowell, Price, Stainer and White

4    _____In his fourth amended complaint, plaintiff makes the following specific

5    allegations with respect to defendants Walker, Alvarado, Dowell, Price, Stainer and White, all of

6    whom are correctional officers at either Folsom State Prison or CCI:

> At all times herein mentioned, Defendant J. P. Walker was a
> Correctional Officer  at Folsom State Prison serving under the rank
> of sergeant to James Pifer and was responsible for his care and
> custody.  As a correctional officer, Defendant Walker was
> responsible for following and upholding the unconstitutional policy
> of requiring SHU inmates to debrief in order to be released from
> SHU.  This Defendant was responsible for counseling Plaintiff to
> snitch regardless of whether the information he would give to the
> classification committee was true or not.  Defendant Walker
> violated plaintiff's constitutional rights guaranteed by the
> . . . Eighth Amendment . . .

13   Fourth Am. Compl. at 5:3-12.

> At all times herein mentioned, Defendant R. Alvarado was
> Plaintiff's Correctional Counselor and a member of the Unit
> Classification Committee that presided over Plaintiff's
> classification hearings at California Correctional Institution,
> Tehachapi.   He also told Plaintiff that Plaintiff must divest and
> take the polygraph test to get out of the Segregated Housing Unit
> ("SHU") even though he believed that Plaintiff was not a gang
> member.  These actions violated Plaintiff's constitutional rights
> guaranteed by the . . . Eighth Amendment. . .

19   Id. at 5:13-20.

20

_____

21        [4]  Near the end of the points and authorities in support of their motion, defendants appear
     to argue that they are all entitled to immunity from suit under the doctrine of qualified immunity.
22   MSJ at 22:8-24:6.  The court understands defendants' qualified immunity argument is not being
     asserted on behalf of defendants McCarthy, Rowland, Borg and Bunnell.  As noted above,
23   defendants argue, and the record reflects, that McCarthy, Rowland, Borg and Bunnell should be
     granted summary judgment because there is no evidence indicating any of these defendants took
24   any action resulting in a violation of plaintiff's constitutional rights; in particular, there is no
     evidence defendant McCarthy was personally responsible for adopting and implementing the
25   debriefing policy at Pelican Bay.  Id. at 20:25-22:7.  Defendants' argument with respect to why
     defendants should be granted qualified immunity, however, is that the actions taken by certain
26   defendants were protected under the doctrine of qualified immunity.  Id. at 22:8-24:6.

1    At all times herein mentioned, Defendant J. Dowell was a
     Correctional Counselor and a member of the Unit Classification
2    Committee that presided over Plaintiff's classification hearings at
     California Correctional Institution, Tehachapi.   He was
3    responsible for adhering to the unconstitutional custom, policy, and
     practice of requiring SHU inmates to debrief before they are
4    released to the general population.   Defendant Dowell violated
     Plaintiff's constitutional rights guaranteed by the . . . Eighth
5    Amendment. . .

6  Id. at 5:21-6:1.

7    At all times herein mentioned, Defendant B. Price was a
     Correctional Counselor at the Unit 5 Building at Tehachapi and
8    then sat on a classification committee as Acting Counselor at
     California Correctional Institute.  He told Plaintiff that in order to
9    leave SHU, he must debrief and volunteer a lot of information . . .
     These actions violated Plaintiff's constitutional rights guaranteed
10   by the . . . Eighth Amendment. . .

11  Id. at 6:9-17.

12   At all times herein mentioned, Defendant J.S. Stainer was a
     Correctional Deputy Superintendent at the California Correctional
13   Institute.  He approved and signed multiple reports of confidential
     informants' debriefing sessions that were used as evidence to
14   validate Plaintiff as a gang member.  Defendant was responsible
     for upholding and following the unconstitutional custom, policy,
15   and practice of requiring inmates to debrief prior to their release
     from SHU.  He was also responsible for entering unreliable
16   evidence into Plaintiff's record that caused him to be placed in
     SHU.  Defendant Stainer's actions violated Plaintiff's
17   constitutional rights guaranteed by the . . . Eighth Amendment. . .

18  Id. at 6:28-7:10.

19   At all times herein mentioned, Defendant T. White was Associate
     Warden of Custody at Old and New Folsom and sat on the initial
20   classification committee, which Plaintiff alleges was biased.
     Defendant White was responsible for placing Plaintiff in SHU on
21   unreliable evidence and for following and upholding the
     unconstitutional custom, policy and practice of requiring SHU
22   inmates to debrief in order to be released from SHU.  These actions
     violated Plaintiff's constitutional rights guaranteed by the . . .
23   Eighth Amendment. . .

24  Id. at 7:11-18.

25    Also, in his fourth amended complaint, plaintiff asserts he was housed at old

26  Folsom State Prison immediately prior to being transferred to segregated housing for the first

10

time at CSPS, on November 13, 1986. Id. at 8:12-18. Plaintiff alleges he was housed in

segregated housing for a total of fourteen years between 1986 and 2000. Id. at 7:24-26, 13:1-2.

During this time, he was housed at CSPS between November 1986 and January 1987, Opp'n, Ex.

A at 2:27-3:11; CCI between January 1987 and November or December 1989, id., Ex. A at 3:11-

12; Defs.' Ex. A at 10, 97; and Pelican Bay Sate Prison (Pelican Bay) between the end of 1989

and 2000, Defs.' Ex. A at 97; Fourth Am. Comp1. at 7:24-26.

Plaintiff claims the actions of Walker, Alvarado, Dowell, Price, Stainer and White

violated plaintiff's Eighth Amendment rights by subjecting plaintiff to "painful" conditions of

administrative segregation and by conditioning his release on debriefing. Fourth Am. Comp1. at

13:11-16, 14:1-6.

Defendants argue, among other things, that defendants Walker, Alvarado, Dowell,

Price, Stainer and White are immune from suit with respect to plaintiff's Eighth Amendment

claims against them. Government officials performing discretionary functions generally are

shielded from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known.

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To survive a motion for summary judgment

based on qualified immunity, the plaintiff must show that there are facts in the record sufficient

to establish that defendants' conduct violated a constitutional right. Saucier v. Katz, 533 U.S.

194, 201 (2001); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). If no constitutional violation

occurred, defendants are immune from liability. Saucier, 533 U.S. at 201. If a constitutional

violation occurred, the court must further inquire "whether the right was clearly established." Id.

"If the law did not put the [defendants] on notice that [their] conduct would be clearly unlawful,

summary judgment based on qualified immunity is appropriate." Id. at 202.

Defendants argue the facts show that Walker, Alvarado, Dowell, Price, Stainer

and White were simply following CDC regulations when they either placed or retained plaintiff

in segregated housing. MSJ at 23:22-26. Defendants also argue that because Walker, Alvarado,

1    Dowell, Price, Stainer and White were simply following regulations, they were reasonable in

2    believing that the manner in which they either validated or retained plaintiff in segregated

3    housing did not violate the Constitution.  Id. at 23:26-24:6.

4            Plaintiff argues correctly that defendants would not be immune from suit under

5    federal law simply by following state regulations that authorize their conduct.  See Opp'n at

6    32:25-33:17; see also O'Connor v. Donaldson, 422 U.S. 563, 574 (1975).  Plaintiff also argues

7    that defendants are not entitled to qualified immunity because they inflicted mental illness upon

8    plaintiff, something that is constitutionally impermissible.  Opp'n at 34:23-25, see also id. at 29-

9    31.[5]

10           As a matter of law, defendants have not violated plaintiff's Eighth Amendment

11   rights simply by placing him or retaining him in segregated housing for an indeterminate period

12   of time, Toussaint v. Yockey, 722 F.2d at 1494 n.6, although total length of time in segregation

13   and periods of time between classification reviews are subject to scrutiny.  Toussaint v.

14   McCarthy, 926 F.2d 800, 803 (9th Cir. 1990) (120 day period between reviews satisfies due

15   process); Hutto v. Finney, 437 U.S. 678, 686 (1978) (if conditions of confinement in

16   administrative segregation are "not materially different from those affecting other prisoners, a

17   transfer for the duration of a prisoner's sentence might be completely unobjectionable . . .");

18   Hoptowit v. Ray, 682 F.2d 1237, 1257 (9th Cir. 1982) (the longer an inmate is without adequate

19   food, shelter, sanitation, medical care and physical safety, "the closer it becomes to being an

20   unwarranted infliction of pain").  Defendants do, however, have a constitutional obligation to

21

22           [5] Plaintiff also argues that defendants did not assert qualified immunity with respect to
     plaintiff's remaining Eighth Amendment claims, but only the remaining due process claims.
23   Opp'n at 34:19-21.  The court understands defendants to assert qualified immunity as to all of
     plaintiff's remaining claims except those against defendants McCarthy, Rowland, Borg and
24   Bunnell, as indicated in note 4 above.  In their points and authorities in support of their motion,
     defendants include a section concerning plaintiff's remaining due process claims, a section
25   concerning the Eighth Amendment claims, and then a separate section regarding qualified
     immunity. MSJ at i-ii, 22-24.  Also, defendants clarify in their reply that they assert qualified
26   immunity as a defense to plaintiff's due process and Eighth Amendment claims.  Reply at 9:13-
     15.

1    refrain from deliberate indifference to any of plaintiff's serious medical needs.  Estelle v.

2    Gamble, 429 U.S. 97, 104 (1976).

3            Despite plaintiff's assertion to the contrary, there is simply no evidence before the

4    court suggesting defendants Walker, Alvarado, Dowell, Price, Stainer or White were ever

5    deliberately indifferent to any serious medical need.  There is no evidence indicating that any of

6    these defendants were aware plaintiff suffered from a serious mental illness when plaintiff was

7    referred for segregated housing, or that plaintiff suffered from a serious mental illness at any time

8    when it was determined that plaintiff would remain in segregated housing, or even that plaintiff

9    ever suffered from a serious mental illness.

10           In his opposition, plaintiff asserts that he suffered from the mental illness of

11   "narcotics addiction" at the time he was placed in segregated housing and that this condition was

12   made worse by time spent in segregated housing.  Opp'n at 30:13-17.  There is evidence before

13   the court that plaintiff has had a drug problem while in prison.  Opp'n, Ex. A at ¶ 5; id., Ex. C at

14   1-3;[6] id., Ex. D at 8, 11, 19, 23, 28, 31; id., Ex. E at 2, 4, 6; Defs.' Ex. A at 72, 74.  But there is

15   no evidence indicating defendants Walker, Alvarado, Dowell, Price, Stainer or White were aware

16   at any time relevant to this case that plaintiff suffered from a mental illness as a result of his drug

17   problem.  There also is no evidence equating plaintiff's drug dependency with mental illness;

18   rather, plaintiff's psychiatric records, provided in raw form without any independent expert

19   interpretation, undermine such a conclusion.  Opp'n, Ex. E at 4; see also id. at 2, 9.[7]  In his

20

21           [6] On May 17, 2006, defendants filed objections to several of plaintiff's exhibits including
     Exhibits C, D and E.  With the exception of the objection addressed in note 11 below, the court
22   need not address defendants' objections in itemized fashion; even if all of plaintiff's evidence is
     considered, it would not change the recommendation below.

23           [7] At best, based on at least some of the evidence of plaintiff's drug problem cited above,
24   plaintiff has shown that there is a genuine issue of material fact as to whether defendants were
     aware that plaintiff had a drug problem and would have benefitted from rehabilitation programs
     that were going to be denied plaintiff while he was in the SHU.  Opp'n, Ex. A at ¶ 31.  Denying
25   one who has drug problems a rehabilitation program does not amount to deliberate indifference
     to a serious medical need, as there is no constitutional right to a drug rehabilitation program.
26   Fiallo v. De Batista, 666 F.2d 729, 730-31 (1st Cir. 1981) (with reliance on Hutto v. Finney, 437

1   affidavit in support of his opposition, plaintiff himself does not say that, at any time, he informed

2   Walker, Alvarado, Dowell, Price, Stainer or White that plaintiff believed he should not be

3   housed in segregated housing due to his mental illness of "narcotics addiction."  Although

4   plaintiff opines that he "has felt psychological effects from my incarceration in SHU," and that

5   his detention in SHU "worsened my addiction illness," Opp'n, Ex. A ¶¶ 29, 34,[8] his own

6   conclusory averments, which do not pinpoint when he felt the effects or his "illness worsened,"

7   are insufficient to foreclose summary judgment.  F.T.C. v. Publishing Clearing House, Inc., 104

8   F.3d 1168 (9th Cir. 1997).

9          In light of the foregoing, the court finds that defendants Walker, Alvarado,

10  Dowell, Price, Stainer and White are entitled to qualified immunity with respect to plaintiff's

11  remaining Eighth Amendment claims because the record on this motion fails to demonstrate a

12  genuine issue of material fact with respect to whether these defendants violated plaintiff's Eighth

13  Amendment rights.[9]

14  /////

15  /////

16

17  U.S. 678, 686 n.8 (1978) and Rhodes v. Chapman, 452 U.S. 337 (1981)).  Plaintiff also fails to
18  present anything indicating Walker, Alvarado, Dowell, Price, Stainer or White had any reason to
    believe that plaintiff could not obtain medical attention if he were to develop a serious medical
19  need while housed in the SHU.

20      [8]  The court has considered plaintiff's report that he "contemplated and attempted suicide
    on many occasions" – and specifically "six or seven times" – while in segregated housing,
21  Opp'n, Ex. A ¶ 29, but has determined that this information does not change the conclusion
    reached herein.  Plaintiff does not indicate when or in which facility his attempts were made, and
22  points to no evidence showing that any defendants were aware of the attempts.  Cf. Pl.'s
    Response to Defs.' Statement of Undisputed Facts, Nos. 120-125.

23      [9]  Defendants also argue that plaintiff's Eighth Amendment claims are barred by the
    doctrine of res judicata.  MSJ at 18:14-19:26.  Defendants argue that because plaintiff is a
24  member of the class of plaintiffs identified in Madrid, 889 F. Supp. 1146, he cannot maintain his
    Eighth Amendment claims in this action.  In Madrid, plaintiffs sought injunctive relief regarding
25  the conditions of confinement at Pelican Bay.  Id. at 1155.  This is a case for damages based on
    the actions of particular individuals.  Therefore, defendants are not entitled to res judicata.  Hiser
26  v. Franklin, 94 F.3d 1287, 1291 (9th Cir. 1996).

1          B.  Due Process

2                  Plaintiff asserts that defendants White, Price, Kraemer, Dowell and Alvarado also

3      violated his right to due process under the Fourteenth Amendment by either placing or retaining

4      him in segregated housing for being associated with the "Aryan Brotherhood" despite the fact

5      that, according to plaintiff, there was no evidence presented to these defendants indicating

6      plaintiff's association with this group.  In his fourth amended complaint, plaintiff alleges

7      defendants White and Kraemer sat on the committee that first referred plaintiff for placement in

8      segregated housing at CSPS.  Fourth Am. Compl. at 6:2-8, 7:11-18.  Plaintiff also alleges Price,

9      Dowell and Alvarado were on committees electing to retain plaintiff in segregated housing at

10     CCI.  Id. at  5:13-20, 5:21-6:1, 6:9-17.  Although plaintiff's case appears directed primarily at the

11     11 years he spent in segregated housing at Pelican Bay, no defendant is named or identified as

12     involved in the decision to place or retain plaintiff in segregation at that institution.[10]

13                 In their motion for summary judgment, defendants make three arguments with

14     respect to plaintiff's due process claims:  (1) plaintiff was not entitled to any due process

15     protection before being placed in segregated housing; (2) assuming he was entitled to due process

16     protection, plaintiff received all the process due; and (3) if plaintiff was entitled, under the Due

17     Process Clause of the Fourteenth Amendment, to be placed in segregated housing only after

18     some evidentiary standard was met, that standard was met.

19          1.  Defendants White and Kraemer

20                 On November 13, 1986, plaintiff was removed from general population at Folsom

21     and placed in segregated housing at CSPS.  Defs.' Ex. A at 63-64.  Plaintiff was informed in

22     writing on that day that he was being placed in segregated housing for the following reasons:

23     /////

24

25                 [10]  The only remaining defendant who is alleged to have any connection with Pelican Bay
       whatsoever is former CDC Director McCarthy, who allegedly was responsible for "supervision
26     and management" of various institutions including Pelican Bay.  See page 7 supra.

> During the past year at Folsom State Prison, the Aryan
> Brotherhood prison gang has been responsible for numerous acts of
> violence including stabbings, homicides, extortion and intimidation
> against other inmates within the general population.  You are
> believed to be involved in this activity by virtue of the evidence
> identifying you with this prison gang as indicated on the CDC-
> 812A in your Central File.  You are placed in Administrative
> Segregation for Institution Security and protection of others,
> pending evaluation by the Institution Classification . . . Committee.

Id.  A week later, on November 20, 1986, a hearing was held regarding plaintiff's move to

segregated housing.  Id., Ex. A at 62.  At the hearing, plaintiff informed defendants White and

Kraemer that he was not, nor had he ever been, a member of the Aryan Brotherhood.  Id.  White

and Kraemer informed plaintiff that he had been validated as a gang member in March of 1986.

Plaintiff also was informed that he would remain in segregation pending further investigation and

that plaintiff's status would be reviewed within thirty days.  Id.

On December 23, 1986, plaintiff attended another hearing regarding his housing

status.  Id., Ex. A at 72.  At this hearing, plaintiff was again retained in segregated housing

pending further investigation.  Id.  Shortly after this hearing, plaintiff was transferred to CCI.

Opp'n, Ex. A at 3:11-12.

Shortly after plaintiff arrived at CCI, the classification committee, which included

defendant Dowell, found that plaintiff would remain in segregated housing on an indeterminate

basis because of plaintiff's association with the Aryan Brotherhood.  The CCI committee

calendared the matter for review in three months.  Defs.' Ex. A at 73.

As noted above, defendants assert that they had the right to put plaintiff in

segregated housing without any process because, by being placed in segregated housing, plaintiff

was not subjected to atypical and significant hardship in relation to the ordinary incidents of

prison life.  MSJ at 7:7-8:4.

The Due Process Clause of the Fourteenth Amendment protects persons against

deprivations of life, liberty or property.  Wilkinson v. Austin, 545 U.S. 209, 221, 125 S. Ct. 2384,

2393 (2005).  Those who seek to invoke the procedural protections of the Due Process Clause

1   must establish that one of these interests is at stake.  Id.  "A liberty interest may arise from the

2   Constitution itself . . ., or it may arise from an expectation or interest created by state laws or

3   policies."  Id.

4            The Supreme Court has held that "the Constitution does not give rise to a liberty

5   interest in avoiding transfer to more adverse conditions of confinement."  Id. (citing Meachum v.

6   Fano, 427 U.S. 215, 225 (1976)).  However, the Court also has held that "a liberty interest in

7   avoiding particular conditions of confinement may arise from state policies or regulations,

8   subject to the limitations set forth in Sandin v. Conner, 515 U.S. 472 (1995)."  Id.  Such interests

9   generally are limited to "freedom from restraint which. . . imposes atypical and significant

10  hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin, 515 U.S. at

11  484.

12           In Sandin, the Supreme Court found no liberty interest protecting against a thirty-

13  day assignment to segregated confinement because it did not "present a dramatic departure from

14  the basic conditions of [the inmate's] sentence."  Sandin, 515 U.S. at 485; cf. Cato v. Rushen,

15  824 F.2d 703, 705 (9th Cir. 1987) (initial confinement in administrative segregation on the basis

16  of little, even unsubstantiated information, does not create objectionable condition).

17           In light of Sandin, defendants White and Kraemer are entitled to summary

18  judgment with respect to plaintiff's remaining due process claim.  The evidence before the court

19  indicates that White and Kraemer assigned plaintiff to segregated housing temporarily pending

20  further investigation into whether plaintiff was in fact a gang member.  Plaintiff also was

21  informed that he would receive a follow-up hearing within thirty days.  As noted above, that

22  hearing actually took place thirty-thee days later.  Plaintiff has not presented facts indicating that

23  his initial, temporary assignment by White and Kraemer to segregated housing presented a

24  dramatic departure from the basic conditions of his sentence of imprisonment, nor that his

25  assignment imposed atypical and significant hardship.

26  /////

1    Furthermore, based on the facts before the court and the state of the law at the

2  time of their alleged actions, White and Kraemer are immune from suit under the doctrine of

3  qualified immunity.  See Harlow, 457 U.S. at 818; Saucier, 533 U.S. at 201.

4        2.  Defendants Price, Dowell and Alvarado

5    As noted above, plaintiff appeared at a classification hearing at CCI on January

6  16, 1987.  Defs.' Ex. A at 73.  The hearing was conducted by defendant Dowell and two other

7  CCI employees.  Id.  The CCI employees elected to place plaintiff in the SHU on "indeterminate

8  status" based upon plaintiff's association with the Aryan Brotherhood, with a further review

9  scheduled in three months.  Id.

10    After this initial hearing, plaintiff's placement in segregated housing was

11  reviewed and his continued placement approved eight times prior to plaintiff's transfer to Pelican

12  Bay approximately two years later.  The dates of the hearings, of which plaintiff had notice, and

13  the participation in those hearings by defendants Price, Dowell or Alvarado is as follows:

14        1) July 16, 1987: Dowell, Alvarado, id. at 74;

15        2) November 12, 1987: Alvarado, id. at 74, 80;

16        3) May 19, 1988:  Dowell, Price, id. at 83;

17        4) November 1, 1988:  Dowell, id.;

18        5) February 10, 1989:  Dowell, id. at 91;

19        6) August 3, 1989: Dowell, Alvarado, id. at 94; and

20        7) November 8, 1989:  Alvarado, id. at 95.   _____

21  Plaintiff was referred for transfer to Pelican Bay on November 8, 1989.  Id. at 95.  Defendant

22  Alvarado and two other CCI officials recommended that plaintiff be transferred due to the fact

23  that CCI was closing its SHU.  Id.  Plaintiff was approved for transfer on November 29, 1989.

24  Id. at 97.

25  /////

26  /////

1    Defendants Price, Dowell and Alvarado argue that, under Sandin, plaintiff was not

2 entitled to any due process protection at any of the hearings in which the defendants participated.

3 On this point, this court cannot agree.

4    At the CCI hearings, plaintiff either was placed or retained in segregated housing

5 indefinitely.  Ultimately, plaintiff remained in segregated housing for a total of fourteen years,

6 with almost three of those years at CCI before transfer to Pelican Bay.  While in segregated

7 housing during the fourteen years, plaintiff asserts that he suffered from "severe sensory

8 deprivation" and that there was very little visual or auditory stimulation.  Opp'n, Ex. A at 4:13-

9 14.[11]  There was little or no social interaction during the majority of the time plaintiff spent in

10 segregated housing.  Id., Ex. A at 4:14-15.  Also, while plaintiff was in segregated housing, he

11 was effectively ineligible for parole because successful participation in a narcotics rehabilitation

12 program was a condition of obtaining parole, and plaintiff had no access to such a program while

13 segregated.  Id., Ex. A at 1:27-2:1, 5:2-3.

14    In Wilkinson, supra, the Supreme Court addressed whether Ohio prisoners had a

15 liberty interest protected by the Fourteenth Amendment in not being assigned to the state's

16 "supermax" prison.  Wilkinson, 125 S. Ct. at 2394-95.  The Court found that because the

17 following conditions imposed "atypical and significant hardship . . . in relation to the ordinary

18 /////

19 /////

20 /////

21 /////

22

23    [11]  Defendants object to plaintiff's assertions that he suffered from "severe sensory
deprivation" and that there was very little auditory or visual stimulation while plaintiff was in
24 segregated housing.  Defs.' Objections at 4:21-25.  Defendants argue these statements lack
foundation, lack personal knowledge, call for speculation, and constitute inappropriate medical
25 testimony.  This objection is overruled.  The phrase "severe sensory deprivation" is not
necessarily a medical conclusion, but rather a description of plaintiff's experience in terms that
26 have clear lay connotations.  Defendants' other objections are not well taken.

1    incidents of prison life," Ohio prisoners did have such a liberty interest:

2        For an inmate placed in OSP, almost all human contact is
3        prohibited, even to the point that conversation is not permitted
    from cell to cell; the light though it may be dimmed, is on for 24
    hours; exercise is for 1 hour per day, but only in a small indoor
4        room.  Save perhaps the especially severe limitations on human
    contact, these conditions likely would apply to most solitary
5        confinement facilities, but here there are two added components.
    First is the duration.  Unlike the 30-day placement in Sandin,
6        placement at the OSP is indefinite and, after an initial 30-day
    review, is reviewed just annually.  Second is that placement
7        disqualifies an otherwise eligible inmate for parole consideration.
    [Cite omitted.] While any of these conditions standing alone might
8        not be sufficient to create a liberty interest, taken together they
    impose an atypical and significant hardship within the correctional
9        context.

10   Id.

11       The facts presented in Wilkinson are sufficiently analogous to the undisputed facts

12   presented in this case to compel the conclusion that plaintiff had a liberty interest protected by

13   the Due Process Clause of the Fourteenth Amendment in not being placed in segregated housing

14   within the CDC for an extended or indefinite period of time without review.

15       Assuming plaintiff had a liberty interest in being free of segregated housing,

16   defendants argue that he received all the process due before being placed and later retained in

17   segregated housing.  Defendants argue that the process to which plaintiff was entitled prior to

18   being placed in segregated housing was as follows:

19       prison officials must hold an informal non-adversarial hearing
    within a reasonable time after the prisoner is segregated; they must
20       notify the prisoner of the charges against him; and the prisoner
    must be afforded an opportunity to present his views.

21

22   MSJ at 9:11-17.  However, in Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003), the Ninth

23   Circuit held that a determination that a CDC inmate is a gang member, and therefore appropriate

24   for assignment to an indefinite term in segregated housing, must be supported by "some

25   evidence."  The requirement of "some evidence" sets a low bar, consistent with the recognition

26   that assignment of inmates within prisons is "essentially a matter of administrative discretion,"

1    subject to "minimal legal limitations."  Id. (citing Toussaint v. McCarthy, 801 F.2d 1080 (9th

2    Cir. 1986) with respect to the minimal limitations).  Even just one piece of evidence may be

3    sufficient to meet the "some evidence" requirement, if that evidence has "sufficient indicia of

4    reliability."  Id. at 1288; Cato, 824 F.2d at 705 ("relevant question is whether there is *any*

5    evidence in the record that *could* support the conclusion reached by the disciplinary board"

6    (citing Superintendent v. Hill, 472 U.S. 445, 455-56 (1985) (emphases in original)); Toussaint v.

7    McCarthy, 926 F.2d at 803 (articulating "sufficient indicia of reliability" standard).  In Bruce, for

8    example, the court noted three pieces of evidence supported the identification of the plaintiff in

9    that case as a gang member: a sheriff's department report that plaintiff was a gang associate; a

10   probation report indicating that plaintiff's codefendant on the underlying charge had been

11   validated as a gang member; and a statement from a confidential informant.  Bruce, 351 F.3d at

12   1288.  The court noted that "any one of these three pieces of evidence would have sufficed to

13   support the validation because each has sufficient indicia of reliability."  Id.

14          In this case, the parties dispute whether there was "some evidence" to support the

15   findings of defendants Price, Dowell and Alvarado that plaintiff was a member of the Aryan

16   Brotherhood.  In order to determine whether there was "some evidence" to support plaintiff's

17   placement and retention in segregated housing for an indefinite period of time based on his

18   alleged membership in a prison gang, this court need not examine the entire record,

19   independently assess the credibility of witnesses, or reweigh the evidence.  Id. at 1287.  As noted,

20   however, the evidence correction officials relied upon must be determined to have had some

21   indicia of reliability.

22          Plaintiff asserts that whatever evidence was relied upon by Price, Dowell and

23   Alvarado to validate plaintiff as a gang member in January 1987, at CCI, appeared in plaintiff's

24   CDC central file (C-file).  Opp'n at 16:26-17:8.  The following documents identifying a link

25   between plaintiff and the Aryan Brotherhood are among those in plaintiff's C-file:

26   /////

1.  An August 17, 1984 memorandum from Lt. J.M. Gonzalez, which reads in part

as follows:

> On August 17, 1984, I interviewed inmate [redacted] regarding
> threats made against his life. [The inmate] related that he owed the
> "brand" $800 for a $600 drug deal. [The inmate] claims that his
> cell-mate . . . beat up on him and told him that if he did not lock up
> he would be stabbed by the Aryan Brotherhood.  [The inmate]
> claims he had purchased $600.00 worth of "Crank" from PIFER,
> James, B-86791, aka "Cowboy".  He further states that PIFER is
> one of the biggest dope dealers in the prison due to the fact that he
> has the backing of the "Brand". . .

Defs.' Am. Ex. C, Attach. 1 at 2.[12]  In an accompanying declaration, an Institutional Gang

Investigator, Quinones, explains that the memorandum indicates plaintiff "had the backing of the

Aryan Brotherhood."  Id., Declaration of A. Quinones, ¶ 3.[13]

2.  A November 5, 1985 memorandum indicating an inmate identified plaintiff as

a drug dealer "involved with" the Aryan Brotherhood.  The inmate also indicated that plaintiff is

known as "Cowboy."  Id., Attach. 1 at 4.

3. A March 5, 1986 memorandum from Lt. J.M. Gonzalez, which reads as

follows:

> [Plaintiff's] file was researched on this date relative to prison gang
> involvement.  Reports in [plaintiff's] central file indicate that Pifer
> has been known to deal in the sells [sic] of narcotics on behalf of
> the Aryan Brotherhood.  Due to subject's involvement in the
> selling and smuggling of "drugs" for the AB, Pifer has been
> "branded' as an associate of the AB.  Reliable, confidential
> informants, have related that Pifer, is being used by the AB to push
> narcotics, however at no time what-so-ever will he ever be
> considered for membership in that organization.
> Pifer just happens to be an inmate, like many others, that the AB
> use to carry out their criminal activity in Folsom Prison.

Defs.' Ex. A at 61.

---

[12]  Defendants' Amended Exhibit C is filed under seal.  See Docket entries 446, 447 and 449.

[13]  Plaintiff does not dispute that in August 1984 plaintiff had the backing of the Aryan Brotherhood.  Pl.'s Response to Defs.' Statement of Undisputed Facts, No. 21.

4.   A July 30, 1986 memorandum by Chief Deputy Warden R.D. Briggs.  In the memorandum Briggs asserts an inmate told him that members of the Aryan Brotherhood had an inmate stabbed for not giving them a percentage of the profit the inmate received from selling jewelry the inmate made in the prison hobby shop.  After the inmate was stabbed, plaintiff "AKA "Cowboy'" broke into the inmate's hobby shop locker, stole his jewelry, and turned the jewelry over to the Aryan Brotherhood.  Id., Attach. 1 at 6.[14]

5.   Pages 7-52 of attachment 1 to defendants' Exhibit C contain further confidential evidence, placed in plaintiff's C-file after November 1986 and before December 1989 when plaintiff was transferred to Pelican Bay, of plaintiff's involvement with the Aryan Brotherhood.  See especially, Defs.' Am. Ex. C, Quinones Decl. ¶¶ 8-11 & pages 7-15, 17, 20-25 (memoranda dated July 29, 1987, February 17, 1988 and July 1, 1988, detailing incidents linking plaintiff to the Aryan Brotherhood, or documenting identification of plaintiff as belonging to or affiliated with Aryan Brotherhood by confidential inmate informants deemed to be reliable).[15]

---

[14]  Plaintiff's objection to reliance on this memorandum, on grounds that there is no indication the inmate informant who reports the jewelry theft had personal knowledge of the theft, is well-taken; the court has not relied on this document in reaching its conclusion below.

[15]  Defendants also point to the following documents in plaintiff's C-file, which the court has disregarded based on plaintiff's observations regarding the documents' contents:

> 1.  A June 10, 1985, memorandum indicating that plaintiff threatened another inmate when the inmate failed to give plaintiff cigarettes to complete a drug deal. Defs.' Am. Ex. C, Attach. 1 at 3.  As plaintiff points out, this memorandum contains no mention of any gang or gang involvement.

> 2.  A June 6, 1986 memorandum authored by Lt. R.J. Farley, which reads, in part, as follows: "On 6-5-86, [redacted] stated his cellie, Inmate Pifer, B-86791 asked [redacted] if he was a child molester.  Pifer stated if [redacted] would tell him the truth, he (Pifer) would take care of the problem. [Redacted] stated that the reason Pifer asked was because two (2) unknown inmates asked Pifer if they could "hit" [redacted].  [Redacted] admitted the truth to Pifer and Pifer stated "I'll take care of it because I don't want anything to hamper my program and I don't want to go to the hole because my cellie gets stabbed."  Id., Attach. 1 at 5.  As plaintiff points out, this memorandum also contains no express mention of any link between plaintiff and the AB or any other gang, and no expert declaration concludes as much.

1    Based on the undisputed facts before the court, there was at least "some evidence"

2    having indicia of reliability in plaintiff's C-file that plaintiff was an associate of the Aryan

3    Brotherhood at the time he was initially placed in segregated housing at CSPS in November

4    1986, and then confirmed for indefinite placement at CCI in January 1987.  Two separate inmate

5    reports, on different dates, identify plaintiff as being associated with the Aryan Brotherhood, as

6    having the alias "Cowboy," and as being a drug dealer for the Aryan Brotherhood.  The

7    information provided in each inmate report corroborates the information supplied by the other

8    report, thereby giving the information indicia of reliability.  Cf. Bruce, 351 F.3d at 1288.  Lt.

9    Gonzalez's memorandum confirms the file contents and offers the professional assessment that

10   plaintiff is affiliated with the Aryan Brotherhood even if not a member.  There is also more than

11   "some evidence," in the form of the confidential C-file memos, to support plaintiff's retention in

12   segregated housing at CCI through plaintiff's transfer to Pelican Bay at the end 1989.  At

13   reasonably regular intervals, plaintiff's SHU classification was reviewed and continued only after

14   a hearing of which plaintiff was notified.  Defs.' Ex. A at 74, 80, 83, 91, 94, 95.[16]

15   In light of the foregoing, defendants Price, Dowell and Alvarado are entitled to

16   summary judgment because there is no genuine issue of material fact with respect to whether any

17   of them violated plaintiff's right to due process.  They also are entitled to immunity from suit

18   /////

19   /////

20

21   [16]  The reviews of plaintiff's status in segregation occurred, in most cases, at least every

22   six months, and usually less.  Although a six month period between reviews exceeds the 120 day
     period found to satisfy due process in Toussaint v. McCarthy, 926 F.2d at 803, given the
     discretion granted to prison administrators in this context, a six month period between certain

23   reviews, after satisfactory initial determinations, also satisfies due process.  In any case, plaintiff
     – whose focus is on the evidence (or lack thereof) to support the repeated decisions to detain him

24   – has not pointed to evidence demonstrating any particular harm that has resulted from the lack
     of less regular review than he received for the time he spent in segregated housing at CSPS and

25   CCI.  Jackson v. Carey, 353 F.3d 750 (9th Cir. 2003) (noting that for any claim to which 42
     U.S.C. 1997e(e) applies, there must be a showing of physical injury that is more than de

26   minimis); see pages 13-14 supra.

under the doctrine of qualified immunity, considering the standards applicable to a qualified immunity defense and the state of the law at the time of their actions as alleged in the complaint. See Harlow, 457 U.S. at 818; Saucier, 533 U.S. at 201.

IV.  Conclusion

For the foregoing reasons, the court will recommend that defendants' motion for summary judgment be granted and this case be closed.  Because plaintiff's opposition to defendants' motion is filed under seal, the parties will be ordered to submit to the court a proposed redacted copy of plaintiff's opposition within twenty days for public filing.  The redacted copy must comply with the protective orders already issued in this case.

In accordance with the above, IT IS HEREBY ORDERED that, within twenty days, the parties shall submit a proposed redacted version of plaintiff's opposition to defendants' motion for summary judgment for public filing; and

IT IS HEREBY RECOMMENDED that:

1.  The motion for summary judgement filed on January 30, 2006 by defendants Alvarado, Borg, Bunnell, Dowell, Kraemer, McCarthy, Price, Rowland, Stainer, Walker and White be granted; and

2.  This case be closed.

/////
/////
/////
/////
/////
/////
/////
/////
/////

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:  December 14, 2006.

_____
U.S. MAGISTRATE JUDGE

1
pife1623.msj(5)